**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ETHAN ERWIN ROBERTS,**
          **Plaintiff,**

**vs.**                                **No. CIV 03-686 MCA/LCS**

**LAWRENCE BARRERAS, et al,**
              **Defendants.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Defendants' Joint Motion for Summary

Judgment for Failure to File Complaint Within Applicable Statutory Time Limitation Period, filed

August 8, 2007 (Doc. 125); Motion for Acceptance of Plaintiff's Untimely Filed Opposition to

Defendant's Motion for Summary Judgment, filed January 18, 2008 (Doc. 147);  Plaintiff's Request

for Appointment of Counsel, filed January 18, 2008 (Doc. 148); Defendant Dr. Donna Deming's

Motion for Partial Summary Judgment filed August 3, 2007 (Doc. 121); and lastly, Defendants' Joint

Motion for Summary Judgment, filed August 3, 2007 (Doc. 123).   The United States Magistrate

Judge, having considered the motions, the briefs, the record, relevant law, and being otherwise fully

advised, recommends the following, as found herein.

**I. PROCEDURAL HISTORY**

       On June 14, 2007, this case was remanded to the  District Court from the Tenth Circuit Court

of Appeals. (Doc. 112).  After a status conference held July 2, 2007, the Court set deadlines for

Plaintiff to serve Defendants not yet served, to continue proceedings and to respond to any motions

for Summary Judgment filed by Defendants (Doc. 116) by September 4, 2007.

       On August 3, 2007, a number of motions were filed by Defendants.  Dr. Donna Deming filed

a Motion for Partial Summary Judgment Regarding State Law Claims of Negligence of Medical

Malpractice (Doc. 121). Defendants Correctional Medical Services, Lawrence Barreras, Cornell

Corrections, Inc, Santa Fe County Major Romero and Dr. Donna Deming filed a Joint Motion for

Summary Judgment (Doc. 123).  Lastly, Defendants Cornell Corrections, Lawrence Barreras, Major

Romero, Santa Fe County, Correctional Medical Services and Dr. Donna Deming filed a Joint

Motion for Summary Judgment for Failure to File Complaint Within Applicable Statutory

Limitations Period. (Doc. 125).

On August 27, 2007, Plaintiff filed for an Extension of Time to File Oppositions to

Defendants' Motions for Summary Judgment and an extension of time to serve those parties not yet

served. (Doc. 126).   The Court granted Plaintiff's motion, giving him an extension until September

20, 2007 and October 4, 2007, respectively. (Doc. 127). On September 19, Plaintiff filed a second

Motion for an Extension of Time, asking the Court to give him until October 5, 2007 to respond to

Defendants' summary judgment motions, and until November 12, 2007 to serve the parties not yet

served. (Doc. 130)  On September 24, 2007, Plaintiff filed a Motion to Open Discovery. (Doc. 132)

The Court entered an Order on September 26, 2007, ordering the Plaintiff to request discovery with

specificity under FED. R. CIV. P. 56(f). (Doc. 134).  On October 15, 2007, Plaintiff filed another

Motion asking the Court to give him until November 1, 2007 to comply with the discovery order, as

well as to oppose Defendants' Motion for Summary Judgment. (Doc. 136)

On December 19, 2007, the Court entered an Order granting Plaintiff's motion for an

extension of time to respond to the motions for summary judgment (Doc. 146) by January 15, 2008.

On January 18, 2008, Plaintiff filed a Motion for Order to accept Plaintiff's untimely filed

oppositions (Doc. 147) and a Motion to Appoint Counsel (Doc. 148).  On January 22, 2007, Plaintiff

filed a Motion for Extension of Time to File untimely documents (Doc. 149).  On the same day,

Plaintiff filed a Response (Doc. 150) in regard to the Motion for Summary Judgment regarding

Negligence and Malpractice Claims (Doc. 120).


**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Generally, the Movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted). The Movant's initial burden may be discharged by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When applying this standard, the Court examines the record and reasonable inferences "in the light most favorable to the nonmoving party." *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Once the Movant meets its burden, the burden shifts to the non-moving party, who

> may not rest upon the mere allegations or denials of [the non-moving party's] pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e); *see also Celotex*, 477 U.S. at 324.


**III. ANALYSIS**

The Court of Appeals remanded the case to the District Court on June 14, 2007, stating "[w]e find the record unclear as to what grievance process was in place at the time Mr. Roberts

allegedly filed his grievance.  We therefore find it necessary to remand to the district court with instructions to determine the nature of the grievance process, as conveyed to Mr. Roberts, in September 1999." (Doc. 112 at 17).

In addition to resolving the nature of the grievance process, there are five other issues to be resolved: (1) Defendant's Joint Motion for Summary Judgment for Failure to File Complaint Within the Applicable Statutory Limitations Period, (2) Motion for Acceptance of Plaintiff's Untimely Filed Oppositions, (3)  Plaintiff's Motion Request for Appointment of Counsel, (4) Defendant Dr. Donna Deming's Motion for Partial Summary Judgment, and (5) Defendants' Joint Motion for Summary Judgment.

**1.  Defendant's Joint Motion For Summary Judgment for Failure to File Complaint Within Applicable Statutory Limitations Period**

On August 6, 2003, the District Court entered an Order dismissing Plaintiff's complaint, holding that Plaintiff was required to file his complaint within three years after his injuries occurred. (Doc. 5 at 2)[1].   On October 12, 2004, the Court of Appeals reversed the District Court's August 6th Order, and remanded the case, directing this Court to determine whether Plaintiff's alleged administrative filings tolled the applicable limitations period.  (Doc. 23).

On or about April 16, 1999, Mr. Roberts entered the Santa Fe County Adult Detention Center ("SFCADC") (Doc. 1).  He alleges that on approximately April 20, 1999, he began to be exposed to second-hand smoke. *Id*. He further states that on approximately May 16, 1999, he became addicted to nicotine due to exposure to second-hand smoke and began experiencing withdrawal symptoms.  *Id.* Plaintiff alleges that as a result of this exposure to second-hand smoke, Plaintiff began smoking on

---

[1] The limitation period for a § 1983 action is set by the personal injury statute in the state where the action accrues, *see Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984), *aff'd sub nom. Wilson v. Garcia*, 471 U.S. 261, 280 (1985), and the limitation on personal injury actions in New Mexico is three years.  N.M. State. Ann. § 37-1-8 (Repl. Pamp. 1990).

approximately July 1, 1999. *Id.*

Plaintiff claims he would periodically develop severe respiratory problems, at which time he would stop smoking and seek medical attention. *Id.* Plaintiff indicates this process continued for approximately ten months, until he was transferred out of SFCADC on June 8, 2000. *Id.*

According to the Complaint, Plaintiff was aware of his injury shortly after being incarcerated in the SFCADC in May 1999. (Doc. 1). Although Plaintiff cannot pinpoint the exact date he became aware of his alleged injury, it is reasonable based on his assertions to assume he became aware by September 1999. *Id.* In order to achieve compliance with the applicable New Mexico statute of limitations, Plaintiff would have had to file his complaint by September 2002. Plaintiff filed his complaint in June 2003.

Plaintiff contends that he did not actually become aware of his injury until being diagnosed in March 2003, although he was experiencing symptoms as early as September 1999. (Doc. 68). However, a Plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations. *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004); *See also Baker v. Board of Regents,* 991 F.2d 628, 632 (10th Cir. 1993). Therefore, the question to be answered is whether Plaintiff "knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Alexander*, 382 F.3d at 1216. The statute of limitations began to run at the time that Plaintiff became aware of his alleged injury, which appears to be September 1999.

The limitations period in a federal action is subject to equitable tolling in appropriate cases. *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). However, equitable tolling of the limitations period is limited to "rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). Furthermore, equitable tolling is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances

5

beyond his control. *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).   On October 26, 2005, the District Judge adopted the Proposed Finding and Recommended Disposition, filed August 1, 2005, which determined that no equitable tolling was found sufficient to extend the statute of limitations, therefore barring Plaintiff's complaint under the applicable statute of limitations. (Doc. 100).

Plaintiff appealed the decision on November 3, 2005.  On April 16, 2007, the Court of Appeals reversed the District Court's October 2006 Order (Doc. 112) and further remanded the case to the District Court in order to determine the nature of the grievance process at SFCACD.  *Id*.

In order to determine whether or not Plaintiff's action is time barred under the statute of limitations, this Court must determine the grievance process at SFCACD and whether it was utilized by Plaintiff.

New Mexico law requires that, "[w]hen the commencement of any action, shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation." N.M Stat. Ann. § 37-1-12  (1978).

Defendants allege that at all times relevant to this lawsuit, an Inmate Grievance policy and procedure was in effect at SFCADC (Doc. 125 at 3, Ex. A; Ex. B Affidavit of Anthony Romero). The grievance policy at the SFCADC provided an outside limit of no more than 32 working days for a grievance to be processed, from the date of the incident until its final denial by the senior warden. *Id.* The inmate had ten working days from the date of the incident in which to file a grievance.  *Id.* The grievance officer then had five working days to initiate and conduct an investigation and to forward his or her recommendations to the administrative superior. *Id.*  The administrative supervisor then had five working days in which to approve or deny the grievance. *Id.*  Thereafter, the inmate had five working days in which to appeal the decision and the senior warden had seven working days to review the appeal, and provide a written response. *Id.*  Plaintiff filed his complaint on June 9, 2003.

6

(Doc.1).

Under New Mexico law, "the party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position." *City of Carlsbad v. Grace*, 966 P.2d 1178, 1181 (N.M. Ct. App. 1998). Therefore, Mr. Roberts must sustain his burden of demonstrating that he is entitled to statutory tolling.

Plaintiff claims that he filed approximately fourteen grievance forms, among which was a grievance complaining of lack of access to legal materials and a grievance complaining of exposure to second hand smoke filed no later than early September 1999. (Doc. 69 at 2). He further asserts that he received no receipts upon submission of his grievances, nor any written responses to them. *Id.*

In his Response in Opposition regarding Defendants' Joint Motion for Summary Judgment, Plaintiff refers to a report written by Assistant Attorney General Ralph F. Boyd, Jr.'s to County Commission Chairman Jack Sullivan regarding the investigation of conditions at SFCADC in early 2003. (Doc. 151, Ex. C) In his letter, Mr. Boyd states that "[t]he grievance system at the Detention Center is not providing a meaningful path for redress of inmate complaints. While the facility has a grievance coordinator who processes grievances, the facility fails to document its actions in response to inmates' complaints and fails to let the inmate know how it has responded." *Id.* at 4.

Although a grievance process appears to have been in place, there is significant confusion as to what exactly transpired with regard to Mr. Roberts' grievances. Because of the lack of records, it is unclear how many grievances were filed, for what issues they were filed, and if there was ever any response. Mr. Roberts has the burden of showing that his actions sufficiently tolled the statute of limitations, *Carlsbad*, 966 P.2d at 1181, and although he has not provided any concrete showing of any applicable tolling, because of the confusion and in the interests of justice, this Court recommends that his complaint be considered as timely filed, and instead looks to the merits of the claims and motions. Therefore, the Court recommends Defendant's Joint Motion for Summary Judgment for

Failure to File Complaint Within Applicable Statutory Limitations Period (Doc. 125) be **DENIED.**

**2.  Motion for Acceptance of Plaintiff's Untimely Filed Oppositions (Doc. 147)**

Under New Mexico Local Rule 7.1(b), the failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete.  D.N.M.LR-Civ 7.1(b).  In complete deference to the Plaintiff, the Court will look to the merits of the issues at hand.  Therefore, I hereby recommend that Plaintiff's Motion for Acceptance of Untimely Filed Oppositions be **DENIED** as **MOOT**.

**3. Plaintiff's Motion Request for Appointment of Counsel**

In Plaintiff's Motion for Request for Appointment of Counsel (Doc. 148), he states that the issues contained in the motions "require expert opinions and legal skills far beyond those possessed by Plaintiff" and that for him to oppose the motions, he would require yet another extension of time. (Doc. 148 at 2).  Additionally, Plaintiff contends that he cannot locate all of the defendants not yet served, nor can he research FED. R. CIV. P. 55 sufficiently enough to initiate default proceedings, stating that "[i]t is beyond the Plaintiff's capabilities to complete these tasks while responding to all the motions for summary judgment." *Id.*  Plaintiff also alleges that his physical and mental health is getting worse, and therefore he requires appointed counsel to fairly respond to Defendants' motions. *Id.*

There is no constitutional right to appointed counsel in a civil case. *Durre v. Dempsey* 869 F.2d 543, 547 (10th Cir. 1998).  *See also Bethea v. Crouse*, 417 F.2d 504 (10 th Cir. 1969).  The appointment of counsel is left to the sound discretion of the District Court.  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).  In order to have counsel appointed, a plaintiff must demonstrate, in addition to indigency, "the merits of the litigant's claims, the nature of the factual issues raised in

8

the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.* at 979.

To this date, the Court has granted Plaintiff an additional five months to respond to Defendants' motion and as a  pro se litigant, Plaintiff's pleadings are to be construed liberally and are held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Additionally,  Plaintiff has shown himself to be sufficiently competent to respond to the previous pleadings in the case, and has not demonstrated that the issues currently presented by the Defendants are insurmountably complex without the aid of counsel.  Therefore, as it is within the discretion of this Court, Plaintiff's Motion for Request for Appointment of Counsel is **DENIED**.


**4. Defendant Dr. Donna Deming's Motion for Partial Summary Judgment**

On August 3, 2007, Defendant Deming filed a motion for summary judgment regarding Plaintiff's state law claims of negligence or medical malpractice against her. (Doc. 121).  Defendant Deming claims that Plaintiff did not have his state law claims against her reviewed by the New Mexico Medical Review Commission prior to filing his lawsuit as required by the New Mexico Medical Malpractice Act, NMSA 1978 § 45-1-1 et seq. and therefore his claims are barred by the Act's applicable statue of repose.  *Id*.

On January 22, 2008, Plaintiff filed a motion asking the Court to grant Dr. Deming's motion, conceding that Plaintiff failed to seek review of his negligence and medical malpractice claims against Dr. Deming by the Commission prior to having filed this suit.  (Doc. 150).  As a result of Plaintiff's concession,   I hereby recommend that Defendant Deming's Motion for Partial Summary Judgment (Doc. 121) be **GRANTED**.

**5.  Defendants' Joint Motion for Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Generally, the Movant bears the initial burden of establishing that no genuine issue exists as to any material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted).  The Movant's initial burden may be discharged by showing "there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When applying this standard, the Court examines the record and reasonable inferences "in the light most favorable to the nonmoving party."  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).   Once the Movant meets its burden, the burden shifts to the non-moving party, who

> may not rest upon the mere allegations or denials of [the non-moving party's]
> pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If the adverse party does
> not so respond, summary judgment, if appropriate, shall be entered against the
> adverse party.

FED. R. CIV. P. 56(e); *see also Celotex*, 477 U.S. at 324.

This Court has extensively researched and read the documents filed in this case, and has noted that the only affidavit, or similar, with regard to Plaintiff's claims of an Eighth Amendment violation, is Plaintiff's complaint.   In their memorandum in support of their Joint Motion for Summary Judgment, Defendants set forth what they state to be the "undisputed statement of material

facts." (Doc. 124 at 2), with no accompanying affidavits in support of their motion.  However, the

Court in *Celotex* held that "no express or implied requirement in *Rule 56* that the moving party

support its motion with affidavits or other similar materials *negating* the opponent's claims.  On the

contrary, *Rule 56(c)*, which refers to the 'affidavits, *if any*' suggests the absence of such a

requirement. *Celotex,* 477 U.S. at 324 (emphasis in original).  Therefore, the absence of affidavits

submitted by the Defendants is not fatal.

The facts with regard to Plaintiff's Eighth Amendment violation claims, as set forth in

Plaintiff's complaint alone, are as follows:

On April 16, 1999, Plaintiff was booked into the Santa Fe County Adult Detention Center,

run by Cornell Corrections, Inc. ("SFCADC").  At that time, Plaintiff was in possession of a

medically prescribed inhaler for his asthma and emphysema, which had been provided to him at the

previous detention facility.  Plaintiff was subsequently medically cleared for admission into

SFCADC. (Doc. 1 at 3-A-1).  Plaintiff alleges that he used to be a smoker, but stopped the use of all

tobacco products in 1991, on the advice of his physician. *Id.* at 3-A-2.  At the time of his admission

to SFCADC, Plaintiff alleges that he had not used tobacco products for over seven years.  *Id.*

After arriving at SFCADC, Plaintiff was transferred from the holding cell to cell pod B-600,

which is general population housing. *Id.*  Cigarette smoking is permitted by prisoners and staff in all

cells and the day room twenty-four hours a day. *Id.* at  3-A-1  He was placed with another prisoner

known as Tamayo, who smoked approximately fifteen cigarettes a day.  *Id.*

After approximately a month of being housed with Tamayo, the Plaintiff's back injury and

related conditions allegedly became so painful that he claims he was unable to climb to his top bunk

in the cell. *Id.* at 3-A-2.   A Correctional Officer arranged a cell change for Plaintiff, and he was

assigned to a bottom bunk in a second tier cell.  *Id.*

Plaintiff alleges that his new cell mate, Mike, habitually smoked a pack of cigarettes a day.

*Id.*  It was at this point that Plaintiff alleges he became addicted to the nicotine from the Environmental Tobacco Smoke ("ETS"), and began to experience withdrawal symptoms  several times a day.  *Id.*   Approximately 3-4 months later, Plaintiff states he began smoking one to five cigarettes a day to "ward off" the withdrawal symptoms, and became addicted.  *Id.* at 3-A-3, 4.

Additionally, during this time, Plaintiff alleges that his neck and back injuries became so bad that it became too difficult for him to climb the stairs to his second-tier cell, and he was moved to a first floor cell.  *Id.* at 3-A-3.   Plaintiff alleges that his new roommate, Wolf, was a three-pack-a day smoker, who smoked a minimum of forty cigarettes a day. *Id.*  Plaintiff continued to be housed with Wolf for eight months, until Wolf was replaced with Ron for the remaining two and a half months of Plaintiff's time at SFCADC.  Plaintiff alleges Ron was also a smoker and would smoke twelve-fifteen cigarettes a day.  *Id.* at 3-A-3.

Plaintiff further alleges that when bad breathing conditions would develop, he would completely stop smoking and  request medical treatment.  Plaintiff alleges he also complained about the "bad, smokey[sic] air" in cell-pod B-600 to the staff. *Id.*  With regard to the requests for medical treatment, Plaintiff alleges that medical treatments would consist of a "cursory physical examination, over-the-counter medicines, and instructions to use the inhalers to maximum effect to counter the ETS and breathing difficulties, and the suggestion that all smoking be stopped." *Id.* at 3-A-6.

Plaintiff further alleges that he filed a number of grievances regarding his complaints of inadequate medical treatment and the smoke in the cell pod, however he alleges that none of these grievances were processed or answered by defendants. *Id.* at  3-A-5. Plaintiff was transferred from SFCADC in July 2001, and alleges he has become, and remains, completely tobacco smoke free. *Id.*

I have considered both facts set forth by the Plaintiff, as well as the memorandum in support of Defendants' Motion for Summary Judgment.  I do not believe that Defendants have met the burden of showing Plaintiff has presented no genuine issue for trial.

12

First, even absent the requirement of affidavits, Defendants have provided very little facts of their own to demonstrate Plaintiff's claim lacks merit.  "A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956  (7th Cir. 1991). Second, the Defendants fail to cite *Helling v. McKinney*, 509 U.S. 25 (1993), a case which appears to be controlling with regard to ETS Eighth Amendment claims and which appears further to support the fact that there may be a genuine issue for trial presented by the Plaintiff.[2]

In *Helling*, the respondent McKinney alleged that he was assigned to a cell with another inmate who smoked five packs of cigarettes a day. *Helling*, 509 U.S. at 27.  The two issues of law at trial were (1) whether respondent had a constitutional right to be housed in a smoke-free environment, and (2) whether defendants were deliberately indifferent to respondent's serious medical needs.  *Id.*

The Supreme Court affirmed the holding of the Court of Appeals that McKinney had stated a cause of action under the Eighth Amendment by "alleging that petitions have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.* at 36.  The Court further held that "with respect to the objective factor, McKinney must show that he himself is being exposed to unreasonably high levels of ETS." *Id.*  Additionally, the Court held that determining whether a prisoner's confinement violates the Eighth Amendment requires "a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." (emphasis in original). *Id.*

Therefore, I believe that there could be genuine issues of fact presented by Plaintiff with

---

[2] Defendants' cases all appear to pre-date *Helling*.  Perhaps *Helling* is distinguishable, but it does not appear so to this court. *See also Woodberry v. Simmons*, 109 Fed. Appx. 213 (10th Cir. 2004) *Ciempa v. Ward*, 150 Fed. Appx. 905 (10th Cir. 2005).

regard to his ETS Eighth Amendment claims, under the analysis of *Helling*, and recommend that Defendants' Joint Motion for Summary Judgment be **DENIED** at this time.

## IV. CONCLUSION

Having reviewed the record in this case, all applicable law, and being otherwise fully advised, I recommend that Defendants' Joint Motion for Summary Judgment for Failure to File Complaint Within Applicable Statutory Time Limitation Period (Doc. 125) be **DENIED**; Motion for Acceptance of Plaintiff's Untimely Filed Opposition to Defendant's Motion for Summary Judgment (Doc. 147) be **DENIED as MOOT**;  Plaintiff's  Request for Appointment of Counsel (Doc. 148) be **DENIED**; Defendant Dr. Donna Deming's Motion for Partial Summary Judgment (Doc. 121) be **GRANTED**; and lastly, Defendants' Joint Motion for Summary Judgment (Doc. 123) be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Boulevard N.W., Albuquerque, NM 87102.  A party must file objections within the ten day period if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**